RYAN ET AL., APPELLANTS, *v.* MAXEY ET AL., RE-
SPONDENTS.

[Submitted March 24, 1893.  Decided January 29, 1894.]

ATTACHMENT—*Waiver of lien—Appeal.*—An attaching creditor does not waive his
    attachment lien by taking judgment and selling the attached property under
    execution, while an appeal from an order dissolving the attachment is pend-
    ing and undetermined.
SAME—*Same—Surviving partner—Statutory construction.*—The amendment of
    section 229 of the Probate Practice Act (Sess. Laws 1889, p. 146), requiring a
    surviving partner to settle the affairs of the partnership without delay, " treat-
    ing all creditors alike, and giving no preference to any, except such as are
    made so by mortgage, pledge, or lien," enacted prior to a sale of partnership
    property under execution, cannot be construed to abrogate an attachment lien
    acquired thereon prior to its passage, as such construction would render it
    retroactive.
CREDITOR'S BILL—*Supplementary proceedings—Judgment lien.*—A creditor's bill
    to enforce a judgment lien against property claimed by defendants under a
    judicial sale need not be preceded by proceedings supplementary to execution,
    as such summary process is applicable to the discovery of property subject to
    execution, concealed or withheld by the debtor or others in collusion with him
    without pretense of substantial right, and not to cases where the attitude of
    the parties to the property in controversy is fully understood.

*Appeal from Ninth Judicial District, Gallatin County.*

CREDITOR'S BILL.   Judgment was rendered for defendants
below by ARMSTRONG, J.   Affirmed.

*E. P. Cadwell,* for Appellants.

*Luce & Luce,* for Respondents.

HARWOOD, J.—Through this action, in the nature of cred-
itor's bill, plaintiffs seek to establish and enforce judgment
liens claimed by them upon certain property held and claimed
to be owned by defendants.  These conflicting claims arose in
this wise: Plaintiffs are the owners of certain judgments ren-
dered against Jacob F. Speith, as the surviving partner of the
firm of Speith & Krug, aggregating in amount about twenty
thousand dollars, which judgments were rendered in 1888, and
are unsatisfied.   Defendants are also judgment creditors of the
same character; that is, they own judgments recovered against
said Jacob F. Speith as surviving partner of Speith & Krug.
It appears, however, that these defendants, in the commence-

ment of their actions against said surviving partner, levied attachments upon all of the property of said firm available for payment of its debts, and thereafter said property was sold on executions issued to enforce the judgments and attachment liens acquired by defendants through said actions; and by virtue of such judicial sales, these defendants claim title to the property in controversy in this action.

Plaintiffs in this action, who obtained or succeeded to judgments against said surviving partner, but who failed to get any of the proceeds of the property of said firm in satisfaction of their judgments, now, through this action, undertake to establish what they claim to be liens on said property arising from their judgments. They maintain that said attachments, forerunning those judgments of defendants in this action, were, for certain reasons to be hereafter considered, void processes.

The process of attachment levied upon said property in said actions of defendants against Speith, surviving partner, etc., were contested by motion to dissolve the same, which motion prevailed in the trial court; but that ruling was reversed on appeal to the supreme court, wherein it was held that such attachments would lie. (See *Krueger* v. *Speith*, 8 Mont. 482; *Cobb* v. *Speith*, 8 Mont. 494; *Maxey* v. *Speith*, 8 Mont. 494; *Bozeman Nat. Bank* v. *Speith*, 8 Mont. 495.) So it appears that those attachments were upheld, and in due course the title now held by these defendants was acquired by sale of the attached property on execution issued upon the judgments obtained in those attachment suits.

One of the minor points urged by appellants is, that those attachment liens were waived, or became void, because the plaintiffs in those attachment suits proceeded, after obtaining judgment, to sell the attached property under execution, while the appeals from the respective orders dissolving said attachments were pending, undetermined. No authorities are cited to support this proposition, and we fail to perceive any force in it, either from analogy to other rules of waiver, or upon principle or reason. The proposition assumes that those attaching creditors, by appealing, and superseding or holding in abeyance the order of the trial court dissolving their attachments, and then prosecuting their appeals to the effect of

reversing those orders, waived the rights and liens acquired through those attachments, because they proceeded to take judgment and execution in the same actions, as the law provides. It is not surprising that appellants have failed to cite any cases, or text of commentator, in support of this position.

After the decision upholding the attachment liens, cited *supra*, the legislature of Montana enacted an amendment to section 229 of the Probate Practice Act. (Sess. Laws 1889, p. 146.) Appellants contended that the provisions of said statute, as amended, require that all of said partnership estate be applied to the payment of the partnership creditors "alike, and giving no preference to any, except such as are made so by mortgage pledge or lien," and that, this provision having been enacted prior to the sale of the partnership property under execution in the cases above referred to, had the effect of so changing the law relating to those cases, while in progress, as to annul the attachment liens acquired and existing prior to the passage of that amendment, and that the sale of said property under execution was void as in contravention of that statute. We do not think appellants' view can be maintained. It would give the statute under consideration the retroactive effect of abrogating the liens lawfully acquired by attachment, and existing when the present statute was enacted. In our opinion, the ruling of the trial court in refusing to so construe the statute was correct. (*Gunn* v. *Barry*, 15 Wall. 610, *Eastman* v. *Clackamas Co.*, 32 Fed. Rep. 24.) In order to sustain plaintiffs' action it was necessary to give the statute such retroactive effect. We think the demurrer was properly sustained.

Respondents raise a question of practice, insisting that this action, in the nature of a creditor's bill, is improper procedure, that such action has been superseded by the statute providing for proceedings supplementary to execution, which proceedings, respondents contend, should have been invoked for the relief sought by appellants. In support of this view, several cases are cited, among which is *Sperling* v. *Calfee*, 7 Mont. 529, wherein it is remarked that those provisions of our code (Code of Civil Procedure, chapter 2, title 9), for proceedings supplementary to execution have, to a great extent, if not wholly,

·superseded the equitable action known as the "creditor's bill." Similar observations have been made in many other cases, and we in no manner question their correctness; for in many respects the relief formerly achieved through the creditor's bill is now afforded with less expense, formality, and delay, and with equal potency, through the summary proceedings supplementary to execution authorized by statute. But it is hardly to be concluded, either from those observations or the provisions of the statute authorizing supplementary proceedings, that the same were intended to utterly abolish equitable proceedings to set aside fraudulent conveyances, assignments; encumbrances, and the like, to enable the judgment creditor to reach equitable assets put beyond the reach of ordinary legal process by some fraudulent device of the judgment debtor— remedies which supplemental proceedings are inadequate to accomplish—preserving to disputants the ordinary method of trial touching property rights. Indeed, the statute contemplates the development of conditions, in the course of supplemental proceedings, which cannot be adjudicated therein, and therefore the statute directs that proper suit be ordered by the court to adjudicate and determine the same. (Code Civ. Proc., § 356; *Teitig* v. *Boesman*, 12 Mont. 404.) It seems to have been the intention of the framers of that statute, to provide a summary process for the discovery and application to the judgment of property subject to execution, concealed and withheld by the debtor, or others in collusion with him, without pretending, when it came to a test under oath, to assert any substantial ground therefor. But where the property alleged to belong to the judgment debtor is claimed by others, either by way of absolute title or pledge or mortgage, or debts claimed to be owing to the judgment debtor are disputed by his alleged debtor, such claims of ownership, lien, or denial of indebtedness cannot be adjudicated and determined summarily, and the property ordered applied to the judgment, without the usual formalities of forming issues and trial, guaranteed as applicable to the determination of property rights. While it might be proper enough to turn the searchlight of supplemental proceedings onto the subject, to discover the attitude of parties towards the property or fund in question, and through

that proceeding obtain an order forbidding the disposition thereof, still many cases will arise where that proceeding alone cannot accomplish all that may be necessary to cut off adverse claims, and avail the judgment creditor of the assets in controversy.   On the other hand, it may be that the attitude of the parties to the subject of controversy is fully known, as in the case at bar, where it seems proceedings supplemental to execution could neither accomplish nor aid the relief sought. And, in our opinion, in such cases, the appropriate action to test the claims or defenses which parties may assert in opposition to taking the property or fund for application on the judgment should not fail because supplemental proceedings did not precede it.   This appears to be the view taken by the courts where these distinctions have been considered—especially in the New York courts, where the statute for proceedings supplemental to execution originated—as shown by Mr. Freeman in his work on Executions, section 394.   (*Gere* v. *Dibble*, 17 How. Pr. 31; *Goodyear* v. *Betts*, 7 How. Pr. 187; *Davis* v. *Turner*, 4 How. Pr. 190; *Bartlett* v. *Drew*, 4 Lans. 444; *Phelps* v. *Platt*, 50 Barb. 430; *Hammond* v. *Hudson River etc. Machine Co.*, 20 Barb. 378; *Burt* v. *Hoettinger*, 28 Ind. 214; *Parsons* v. *Meyburg*, 1 Duvall, 206.)

For the foregoing reasons the judgment of the trial court will be affirmed.

*Affirmed.*

PEMBERTON, C. J., concurs.